### STEVENSON'S ESTATE.

On the reference to an auditor to settle and adjust an account of executors or admi-nistrators of an estate, he has no authority to adjust disputed claims among the exe-cutors as to the proportions of commissions among themselves. He should simply decide upon the aggregate of commissions with which the whole estate can be charged.

Where a testator said in his will, "H. S. will be indebted to my estate at my de-mise, as will be seen by my ledger; the payment of said debt to be made when entirely convenient to him, free from any charge of interest :" *Held*, that this does not mean an ability to pay in the legal acceptation of the phrase ; but when it was convenient to make the payment without producing severe pecuniary embarrass-ment. The period for such payment as to time, is left to the discretion of the legatee, but must be exercised *bonâ fide ;* and if it can be shown at any time, that, regard being had to the pecuniary means of H. S., payment ought to be conve-nient, then the period for coercing the payment of the debt has arrived. Such is a question of fact, and ought to be affirmatively shown by those who seek to enforce it. When it can be shown that the refusal to pay the debt is merely colourable, and he has the means ample for payment, then such refusal would be *mala fide*, and he should be coerced to pay.

*Nov.* 20. THIS case arose in the Orphans' Court, on exceptions filed to the report of the auditor, on the settlement of the account of the executors.

The statement of a few clauses in the will sufficiently presents the points in the case, with the facts referred to in the opinion de-livered by the court. The will was executed in 1829, and con-tained this clause: "Item 17. I give and bequeath unto Henry Seaton a legacy or sum of ten thousand dollars." In March, 1832, the testator annexed a codicil, and, among other items in it, this: "I give to Henry Seaton an additional legacy or sum of five thou-sand dollars. I also give to the said Henry Seaton the right of removing with his family to Bloomsbury, New Jersey, and occupy-ing, free of rent, during the term of his natural life, my messuage and lot of ground thereunto belonging, which for some time was under rent and occupied by Mr. Stephenson, provided that he, within twelve months from and after my demise, shall decide to re-move, and occupy the same." Subsequently, on the 24th of Au-gust, 1832, the testator made another codicil in the following words: "Whereas, I have by codicil to my will bequeathed to Henry Seaton the sum of five thousand dollars, I now revoke said bequest, and

in lieu thereof give him, his heirs and assigns, my late purchase of house No. —, in Chestnut street, and lot of ground thereunto belonging, and now also, for some time past, occupied by him as a residence for his family. The said Henry Seaton will be indebted to my estate at my demise, as will appear by my ledger; the payment of said debt is to be made entirely convenient to him, free from any charge of interest."

The testator constituted the said Henry Seaton and three others his executors. It would seem that Samuel Grant, one of the other executors, was most active in the settling of the estate. An account was filed and referred to an auditor for settlement and adjustment as well as distribution. When the report was filed, exceptions were taken to the same. The important one is so fully stated in the opinion of the Judge, that it is not necessary to insert it.

KING, President, delivered the opinion of the Court, which is as follows:—

So much of the exceptions filed by the accountant as complain of the inadequacy of the commissions, allowed by the auditors, I consider answered by the decision of this Court on the settlement of the first account filed by the exceptants, and the affirmance of that decision by the Supreme Court in Stevenson's Estate, 3 Whart. 98.

In the conclusion of the auditors as to the inadequacy of their powers, under a general reference of an account for adjustment, to apportion the whole commissions earned among the respective executors, we fully concur. The account in effect was a joint one. The duty of the auditors, as regards commissions, was to determine what was a just compensation to be paid from the estate, for the whole services rendered by the executors: Walker's Estate, 9 S. & R. 236. How the aggregate compensation ought of right to be apportioned between the executors, having regard to their relative services and responsibilities, was a question not referred to the auditors. It was purely collateral, and, if mixed up with the main question between the legatees and executors, could only tend to produce complication, and retard the final close of the estate. The true business course for executors, administrators, guardians, or other accounting trustees, is to prefer their charge for commissions as an *entire* claim against the estate. If there exists any difference between such trustees, as to the proportions in which the aggregate commissions ought to be divided, these differences should be settled amicably or adversely among themselves. We do not say that this

Court would not, under appropriate proceedings, settle such a question among executors or other trustees. All that is meant to be said is, that, under a general reference to auditors to settle an administration account, such auditors possess no authority to apportion commissions among joint accountants; their duty under such a reference simply being, among other things, to decide what aggregate sum should be allowed to the accountants, as a whole, for their care and trouble in administering the estate.

But, although the auditors have in the abstract correctly defined their own powers, yet in their report they have practically transcended them. They have treated one-half of the commissions allowed the accountants as if actually earned by Mr. Seaton, and in the hands of Mr. Grant for payment over to him; and added this one-half of the commissions, viz. $2075.98, to the final balance in the hands of Mr. Grant, who holds all the funds of the estate. This appropriation of what is thus supposed to belong to Seaton, as his share of commissions, is made in satisfaction of a debt of $2466.86 due by Seaton individually to the testator before his decease. This is certainly deciding on the very question previously repudiated by them as not within their proper functions. Before one-half of the whole commissions earned could be employed in paying a debt due by one of the accountants individually to the estate, it must be affirmatively shown, that such is of right the debtor executor's proportion of such commissions. And this could only be accurately done after going into the question, submitted by Mr. Grant, and overruled by the auditors, viz. how, and in what proportions, the aggregate commissions allowed, should be divided between him and his co-executor, Mr. Seaton. In this there is error. The true mode of bringing this debt of Seaton into account would be, to charge it as assets in the hands of the executors. If Seaton had been sole executor, and this was a debt due and payable by him to the estate of his decedent, it would of course be assets. And if Mr. Grant, through whose hands the funds of the estate passed, paid over the moneys of the estate to Seaton, whether claimed by Seaton as commissions or otherwise, when at the same time Seaton was a debtor of the estate, such a debt would under such circumstances be properly chargeable against both the executors, settling a joint account, as assets. This mode of charging Seaton's debt, while it would make it enure equally advantageously to the legatees, would leave the question as to commissions between the co-executors untouched. The legatees would receive

all that pertained to them; while the accounts between the executors, either as to commissions or any other transaction connected with the estate, would remain as it properly ought, for adjustment between themselves. On the contrary, were we to arbitrarily divide the commissions between the executors, and set off the debt due by the debtor executor against his supposed share of commissions earned, we might satisfy the debt from a fund in which the debtor had either a partial, or no real interest at all.

In thus varying the manner of introducing the debt due by Seaton into the assets in the hands of the executors for distribution, no change would be produced in the amount payable to each of the legatees, except the difference between the amount of the debt due by Seaton, $2466.86, and the sum of $2075.98, the amount of the half commissions supposed to be due to him, and added to the final balance in the hands of Mr. Grant, on which the dividend among the legatees is struck. A difference of course favourable to the legatees, as it would increase the fund for distribution by the difference between $2466.86. the debt, and $2075.98, the half commissions.

But, although I do not consider the case as free from embarrassment, yet the result of my reflections is, that there are no facts disclosed by the report which will at present justify the introduction of Seaton's debt into the assets for *present* distribution in any form. The language of the testator's will is peculiar. In the ninety-fifth item, after revoking a former legacy of $5000 to Mr. Seaton, and giving him in lieu of it a house in Chestnut street, the testator proceeds thus: "The said Henry Seaton will be indebted to my estate at my decease, as will be seen by my ledger; the payment of said debt is to be made *when entirely convenient to him*, free from any charge of interest." What are we to understand by this phrase, "when entirely convenient?" Does it mean entire ability, or something more or less? That it can mean no less than entire ability, can hardly be seriously contended. And under such a limited construction of the words used by the testator, any tribunal, before charging Mr. Seaton with the present payment of the debt, ought to have "strong and convincing proof of his ability:" Willing *v.* Peters, 12 S. & R. 182. But I am of opinion that the words "when entirely convenient" mean more than mere ability to pay, as that phrase is legally understood, and were intended by the testator to submit to the conscience, provided it is exercised *bonâ fide*, of the debtor *during his lifetime*, the determination of the question of entire convenience to make the payment.

Otherwise I cannot see how the intentions of the testator, influenced as they were by a manifest and anxious kindness for Mr. Seaton, can be justly carried out. And his intentions ought of right to prevail, unless manifestly impracticable. Does simple ability to pay, in the legal acceptation of the phrase, square with paying "when entirely convenient" to the debtor? Certainly not. A man is legally able to pay when he has the pecuniary means of doing so, although such payment should absorb all his means. But would such a payment be considered as made with the entire convenience of the debtor? The abstraction of all, or the greater part of a man's pecuniary means, may be, nay, must be, the source of the greatest personal discomforts. Can a payment producing such results be fairly said to be a payment made with his entire convenience? Supposing Mr. Seaton to be a man of advanced years, out of business or employment, having little or no productive estate, and having the charge of a family dependent upon him, I can well imagine that in such a state of things the wringing from him so considerable a sum as $2400 would be entirely inconvenient; and, searching for the feelings and intentions of this testator towards him, "in the four corners of his will," I am convinced that a construction leading to such results would be altogether violative of those feelings and intentions. I am aware that the construction I have adopted is subject to the objection that, if the time of payment is submitted to the conscience of Mr. Seaton, that that time may never arrive during his lifetime. But if such was the intention of the testator, what right have we to interfere with it? It is *his* will that we are construing. He could do with his own as he pleased, and could adopt any standard of obligation to be applied to his debtor that he thought proper. To us *this* may seem an absurd one; but in him, who knew his man, and who had his own motives and reasons for so directing, it may be the result of gratitude, affection, and well deserved confidence. But a stronger answer to the objection will be found in this principle, that the discretion as to the time of payment, vested in Mr. Seaton, must be exercised *bonâ fide*, and if those interested in the payment can at any time show that, regard being had to his pecuniary situation, *payment ought to be convenient*, then the time for coercing such payment, if refused, has arrived. The true meaning of the will I therefore take to be, that "entire convenience" means a state of things in the debtor's circumstances and relations when such payment ought to be convenient. This is a question of fact, and of course, ought to be affirmatively estab-

lished by those who require immediate payment. Into this inquiry the auditors manifestly did not proceed, but, adopting the theory that Seaton was entitled to one-half the commissions earned, they considered this fund furnished means to pay the debt, and at once applied it to that object.

Now, to my mind, here was no adequate testimony exhibited tending to prove either ability or convenience to pay the debt. In the first place, it is yet a moot question, whether Mr. Seaton is entitled to any, and if any, what part of the commissions earned, the principal part being claimed by Mr. Grant. And even if it had been shown that Mr. Seaton was justly entitled to one moiety of the commissions, it does not follow of consequence that a claim such as this against his creditor's estate, conclusively evidenced either his ability or convenience to make payment of his debt. Like the bequests and devises in the testator's will, such a state of things would be a fair item to be united to the aggregation of all the circumstances, from which it might be inferred that the time had arrived when it ought to be entirely convenient for him to make payment. That the testator did not consider the legacies and bequests to Mr. Seaton would make it entirely convenient for him to pay this debt, is plain. Otherwise he would either have been silent on the subject, or have directed the debt to be deducted from the legacies. Instead of so doing, in the very instrument on which he makes the donations which are now supposed to furnish the means to his debtor to pay, he forbids payment to be demanded until it accords with his debtor's "entire convenience."

The case of French v. Davidson, 3 Madd. Chan. Rep. 396, is illustrative of the principle upon which the liability of Mr. Seaton to present payment of this debt must be placed. There it was held by Sir John Leech, that a direction by a testator that his executors should pay a certain annuity unless circumstances rendered it inexpedient, unnecessary, and impracticable, meant, unless, in the opinion of the executors, circumstances so rendered it. And that the judgment of the executors, in this respect, was uncontrollable by a Court of Equity, *unless they acted mala fide*. This is the key to the present question. If it can be made to appear that the refusal of Mr. Seaton to pay this debt on the alleged ground of inconvenience, is merely colourable, and that his means are ample for that purpose, then his refusal would be *mala fide*, and under such circumstances he ought to be coerced to do right. But, until such a state of things is made to appear, we cannot, consistent with the

true intent and meaning of the will of William Stevenson, compel payment by charging this money as assets in the hands of executors, subject to distribution among the residuary legatees.

So much of the report of the auditors as distributes the sum of $2075.98, being one-half of the commissions allowed to the executors, among the residuary legatees of William Stevenson, is disallowed, and the clerk is directed to state a new distributive account, deducting this sum from the net balance charged against the executors. In all other respects the report of the auditor is confirmed. If the residuary legatees are prepared to substantiate their claim for this sum against Mr. Seaton, it can be introduced in the third account of the executors, about to be presented for confirmation and allowance.